IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


LISA GAY STONE,

      Plaintiff,

v.                                           Case No. 6:14-CV-1278-JTM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

      Defendant.


**MEMORANDUM AND ORDER**

      Plaintiff Lisa Gay Stone seeks review of a final decision by defendant, the Commissioner of Social Security, denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, respectively. Upon review, the court finds that the Commissioner's decision was supported by substantial evidence contained in the record. As such, the decision of the Commissioner is affirmed.

**I.      Factual and Procedural Background**

      Plaintiff filed for DIB on March 31, 2011, and SSI on April 18, 2011, alleging disability beginning April 10, 2010. These claims were approved with a later onset date of October 26, 2011, and plaintiff began receiving benefits. Plaintiff subsequently filed a written request for an administrative hearing, appealing the later onset date. The hearing took place on April 9, 2013, before Administrative Law Judge ("ALJ") Rhonda Greenberg. Plaintiff, represented by counsel, appeared and testified. Also testifying was Vocational Expert ("VE") Robin Cook.

The ALJ issued her decision on August 13, 2013, finding that plaintiff suffered from a variety of severe impairments, including lumbar disc disease, degenerative joint disease in the hips and knees, and breast cancer as of October 2011.  Despite these findings, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Her decision was twofold: plaintiff retained the residual functional capacity to perform medium work from April 10, 2010, until October 4, 2011, the time of plaintiff's breast cancer diagnosis, and light work thereafter.

The ALJ therefore concluded that plaintiff was not under a disability during the relevant time period.  This decision became the final decision of the Commissioner on June 27, 2014, after the Appeals Council denied review.  On August 26, 2014, plaintiff filed a Complaint in the United States District Court for the District of Kansas seeking reversal and the immediate award of benefits or, in the alternative, a remand to the Commissioner for further consideration.  Given plaintiff's exhaustion of all administrative remedies, her claim is now ripe for review before this court.

In her brief, plaintiff alleges that the ALJ failed to: (1) accord proper weight to a treating physician, and (2) perform an appropriate credibility analysis.

## II.    Legal Standard

Judicial review of the Commissioner's decision is guided by the Social Security Act (the "Act") which provides, in part, that the "findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).  The court must therefore determine whether the factual findings of the Commissioner are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. *Lax v.*

*Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 U.S. Dist. LEXIS 76220, at *3 (D. Kan. July 28, 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)).

An individual is under a disability only if he or she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *3 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. § 404.1520(a).  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4.

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged

disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax*, 489 F.3d at 1084; *see also Barkley*, 2010 U.S. Dist. LEXIS 76220, at *4-5 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the claimant's residual functional capacity, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

Upon assessing the claimant's residual functional capacity, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform his or her past relevant work or whether he or she can generally perform other work that exists in the national economy, respectively. *Barkley*, 2010 U.S. Dist. LEXIS 76220, at *5 (citing *Williams*, 844 F.2d at 751).  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his or her past relevant work. *Lax*, 489 F.3d at 1084.  The burden then shifts to the Commissioner at step five to show that, despite his or her alleged impairments, the claimant can perform other work in the national economy. *Id*.

### III.    Analysis

#### A.    Treating Physician

Plaintiff first alleges that the ALJ failed to adequately weigh the opinions from her treating physician, namely Dr. Andrew Schowengerdt, to whom the ALJ assigned only little weight.

As a general rule, an ALJ has a duty to evaluate all medical opinions in the claimant's record, to assign weight to each opinion, and to discuss the weight given to the opinion.  *See* 20

C.F.R. §§ 416.927(c), 416.927(e)(2)(ii); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The opinion of a treating physician is generally entitled to controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). In the event that the ALJ decides that "the treating physician's opinion is *not* entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (emphasis added). Relevant factors the ALJ may consider include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted).

"Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons for the weight assigned to a treating physician's opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (ellipsis omitted) (internal quotations omitted); *see also* 20 C.F.R. § 416.927(c)(2). The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (internal quotations omitted). "If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* (internal quotations omitted). If the ALJ fails to explain how he assessed the weight of a treating physician's opinion, a court cannot presume that he actually applied the correct legal standards. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (per curiam).

The record show that Dr. Schowengerdt treated plaintiff six times from November 2009 through September 2012 for a variety of complaints, including hip, knee, and abdominal pain.  In April 2010, Dr. Schowengerdt ordered a right knee x-ray and a bilateral hip x-ray, both of which showed mild degenerative changes.  Dkt. 3-8, at 8-9. He also ordered a lumbar spine MRI, which revealed mild lumbar spondylosis, mild left lateral recess stenosis at the L3-L4 vertebrae, mild caudal neural foraminal stenosis at the L2-L3 vertebrae, and mild bilateral neural foraminal stenosis at the L4-L5 vertebrae.  Dkt. 3-8, at 21-22.

On July 30, 2012, Dr. Schowengerdt completed a "check-the-box" Multiple Impairment Questionnaire, in which he indicated that plaintiff suffered from joint pain, fibromyalgia, and breast cancer.  Dkt. 3-8, at 376.  He opined that plaintiff's prognosis was "good."  Dkt. 3-8, at 376.  Despite this prognosis, Dr. Schowengerdt concluded that plaintiff: (1) could only sit, stand, and walk for four hours out of an eight-hour day; (2) would require the flexibility to change positions every 60 minutes; (3) could frequently lift up to five pounds and occasionally lift up to twenty pounds; (4) could frequently carry up to five pounds and occasionally carry up to ten pounds; and (5) had significant limitations in doing repetitive reaching, handling, fingering, and lifting.  Dkt. 3-8, at 378-79.   Dr. Schowengerdt further opined that plaintiff had minimal difficulty grasping, turning, and twisting objects; minimal difficulty using her fingers/hands for fine manipulations; and moderate difficulty using her arms for reaching.  Dkt. 3-8, at 379-80.  He recommended that plaintiff take unscheduled breaks every three hours and noted that she would likely be absent from work two to three times per month.  Dkt. 3-8, at 380-82.

Based on her review of the record, the ALJ accorded Dr. Schowengerdt's opinion little weight for several reasons.   First, the ALJ noted that Dr. Schowengerdt's opinion was inconsistent with his own treatment notes.  Dr. Schowengerdt only saw plaintiff a handful of

times during the course of three years.  Radiological testing done in response to plaintiff's complaints of knee and hip pain showed only mild degenerative joint disease.  Dr. Schowengerdt noted that plaintiff had normal ambulation without any limp and did not require use of a cane. He recommended moderate exercise.  Dkt. 3-8, at 388.

Second, the ALJ noted that Dr. Schowengerdt's opinion was without support from the other medical evidence of record.  Plaintiff alleges that the ALJ failed to identify substantial evidence contradicting the doctor's opinions.   Although not discussed immediately in conjunction with her assessment of Dr. Schowengerdt's opinion, the ALJ went into detail about the other medical findings of record in her decision.  For example, on August 23, 2011, plaintiff underwent a consultative evaluation with Dr. Eric Hetzel.  Dr. Hetzel noted that plaintiff had a normal spine without deformity or tenderness and a normal range of motion.  Dkt. 3-8, at 48. Plaintiff also had a negative straight and crossed leg raise, normal gait and station, and no sensory, motor, or reflex abnormalities.  Dkt. 3-8, at 48.  Plaintiff's grip strength was equal and normal bilaterally, her grip strength was fifty pounds, and her repetitive fine/gross motors skills were normal.  Dkt. 3-8, at 49.

The ALJ also went into detail about plaintiff's activities of daily living, which she noted did not support Dr. Schowengerdt's limited findings.  For example, the ALJ noted that plaintiff engaged in periods of extended sitting, and could cook and clean the house (including vacuuming).  Dkt. 3-3, at 38-39.  Furthermore, the ALJ noted that plaintiff was a "devoted" caretaker of her elderly mother, with whom she lived.  Dkt. 3-3, at 39.  Plaintiff took her mother to medical appointments, gave her medication, and, when outside help was not available, transferred her mother between the bed and the bathroom toilet and changed her mother's clothes.  Dkt. 3-3, at 39.

The court takes specific note here of plaintiff's argument that the ALJ's specific findings are not "medical findings relevant to fibromyalgia . . . ." Dkt. 4, at 17.  However, while plaintiff outlines a portion of the standard for diagnosing and dealing with fibromyalgia in the disability context, she noticeably fails to mention that the rule of thumb is that a patient "must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia." *Jones v. Colvin*, 2014 U.S. Dist. LEXIS 16519, at *20 (D. Kan. Feb. 11, 2014).  There is no mention *anywhere* in the record of plaintiff meeting this criterion.  In fact, it was not until *after* plaintiff applied for disability benefits that Dr. Schowengerdt made any mention of fibromyalgia.  This diagnosis only appears once in passing in plaintiff's medical records from July 30, 2012 (Dkt. 3-8, at 386), and did not appear in any of Dr. Schowengerdt's records after he completed the Medical Questionnaire.

Plaintiff also argues that, since the ALJ did not assign Dr. Schowengerdt's opinion controlling weight, he was required to include, in narrative form, his analysis with respect to the factors listed in 20 C.F.R. §§ 404.1527 and 416.927.  Dkt. 4, at 19.  Plaintiff relies on Social Security Rulings 96-2p and 96-8p and is correct inasmuch as she cites the correct law dealing with an ALJ's treatment of treating physicians.  Ruling 96-2p states that, even where a treating physician's opinion is not well supported or is inconsistent with the other medical evidence of record, the opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927."  1996 SSR LEXIS 9, at *9 (July 2, 1996).  Ruling 96-8p requires the ALJ to include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  1996 SSR LEXIS 5, at *19 (July 2, 1996).

Here, the ALJ clearly stated her reasons for discounting Dr. Schowengerdt's opinion: it was inconsistent with the doctor's own treatment notes and with the medical record as a whole. The ALJ also noted additional evidence in the record supporting her residual functional capacity: the opinion of consultative examiner Dr. Hetzel and plaintiff's own account of her activities of daily living.  It should also be noted that, on November 15, 2012, just over three months after Dr. Schowengerdt issued his Medical Questionnaire, he submitted a letter in response to the Social Security Administration that stated as follows:

> Unfortunately, since I did not actually see the patient between April 2010 and June of 2012 and only spoke briefly with her on the phone for refills or responded to the pharmacy request for refills I cannot make an accurate opinion of Ms. Stone's impairments during the period from April 2010 through October 2011.

Dkt. 3-8, at 463.

Therefore, based on its review of the record, the court finds that the ALJ's decision with regard to the weight assigned to plaintiff's treating physician is based on substantial evidence. Although there may be additional evidence in the record to support plaintiff's argument, the court may "neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *Bowman*, 511 F.3d at 1272 (quoting *Casias*, 933 F.3d at 800).  Plaintiff's assignment of error is denied.

**B.      Failure to properly assess plaintiff's credibility**

Plaintiff next argues that the ALJ improperly discounted her credibility.  Again, plaintiff claims that the ALJ's finding "shows a fundamental misunderstanding of what types of evidence is consistent with disabling fibromyalgia . . . ."  Dkt. 4, at 22.  Plaintiff also alleges that her ability to perform sporadic activities of daily living for short periods of time and with help from others does not establish her ability to work eight hours a day, forty hours per week on any kind of sustained basis. Dkt. 4, at 22.

A claimant's subjective complaints of debilitating pain are evaluated for credibility under a three-step analysis that asks:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary*, 695 at 1166-67 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). The ALJ "must consider the entire case record, including the objective medical evidence" to determine whether plaintiff's subjective claims of debilitating pain are credible. SSR 96-7p, 1996 SSR LEXIS 4, at *3 (July 2, 1996). The ALJ should consider "a claimant's persistent attempts to find relief for her pain and her willingness to try any prescribed treatment prescribed," regularity of contact with her doctor, possible psychological disorders that may combine with physical problems, daily activities, and daily dosage and effectiveness of medications. *Keyes-Zachary*, 695 F.3d at 1167.

The ALJ need not make a "formalistic factor-by-factor recitation of the evidence" if he specifies evidence relied on in the credibility analysis. *Id.* (citing *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight." *Hayden v. Barnhart*, 374 F.3d 986, 992 (10th Cir. 2004) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *12).

Recognizing that "some claimants exaggerate symptoms for the purposes of obtaining government benefits," (*Bolan v. Barnhart*, 212 F. Supp. 2d 1248, 1260 (D. Kan. 2002) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)), an ALJ's credibility determinations are

generally treated as binding on review. *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. *Wilson*, 602 F.3d at 1144; *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). The court cannot displace the ALJ's choice between two fairly conflicting views even though the court may have justifiably made a different choice. *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007). However, notwithstanding the deference generally given to an ALJ's credibility determination, "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Wilson*, 602 F.3d at 1144 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1998)).

At steps one and two, the ALJ determined that plaintiff established pain-producing impairments that could reasonably be expected to cause the alleged symptoms. She then proceeded to step three, weighing plaintiff's subjective complaints of physical limitations against objective medical evidence relating to physical symptoms and ultimately found plaintiff "not entirely credible." Dkt. 3-3, at 37.

In support of this finding, the ALJ noted, as is outlined in detail above, plaintiff's relatively normal diagnostic results, which showed only mild degenerative changes in her hips and knees. Dkt. 3-3, at 37. The ALJ pointed out plaintiff's consistently normal range of motion, gait, station, sensation, motor strength, grip strength, and reflexes and lack of tenderness upon palpation. Dkt. 3-3, at 37. Of particular concern to the ALJ was plaintiff's self-report of her activities of daily living. In a Function Report, dated October 19, 2011, plaintiff reported that she spent a great deal of her day engaged in activities that involved extended sitting, such as reading, working crossword puzzles, watching television, playing Scrabble, and e-mailing. Dkt.

3-3, at 38; Dkt. 3-7, at 102.  During the administrative hearing, plaintiff testified that she cooks, cleans the house (including vacuuming), loads and unloads the dishwasher, does laundry, shops, visits friends, and provides food and water for household pets.  Dkt. 3-3, at 38-39, 70-75. Moreover, plaintiff stated that she takes care of her elderly mother, taking her to medical appointments and, when no outside help is available, transferring her mother between the bed and the bathroom and changing her mother's clothes.  Dkt. 3-3, at 39, 73.

As noted above, credibility findings are the province of the ALJ and will be affirmed if supported by substantial evidence.  *Wilson*, 602 F.3d at 1144; *Hackett*, 395 F.3d at 1173. The court finds the ALJ's credibility assessment of plaintiff to be based on substantial evidence. Accordingly, plaintiff's second assignment of error fails and is therefore dismissed.

**IT IS THEREFORE ORDERED** this 21st day of July, 2015, that the judgment of the Commissioner is affirmed.

s/J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE